[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13658
Non-Argument Calendar

_____

Agency No. A96-289-561

JESUS JULIO RODRIGUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 16, 2007)**

Before DUBINA, CARNES and FAY, Circuit Judges.

PER CURIAM:

Jesus Julio Rodriguez seeks review of the Board of Immigration Appeals' ("BIA") affirmance of the immigration judge's ("IJ") decision denying his applications for asylum and withholding of removal, 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16. Rodriguez argues on appeal that he established his eligibility for asylum and withholding of removal through his testimony and documentary support that he suffered persecution in Colombia on account of his political opinion. For the reasons set forth more fully below, we deny Rodriguez's petition for review.

Rodriguez, a native and citizen of Colombia, entered the United States on February 14, 2002 as a non-immigrant visitor with authorization to remain until August 13, 2002. Rodriguez remained past his authorized date and the former Immigration and Naturalization Service ("INS")[1] issued him a notice to appear, charging him with removability pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). In February 2003, Rodriguez filed an application for asylum and withholding of removal with the INS.[2] (Id. at 223-34).

At Rodriguez's removal hearing before the IJ, he testified that he was a

<hr/>

[1]The INS was abolished on March 1, 2003, and replaced with the Department of Homeland Security ("DHS"). See Homeland Security Act, Pub.L.No. 107-296 (Nov. 25, 2002), 116 Stat. 2135. This case, however, was initiated while the INS was still in existence. Therefore, we refer to the INS rather than the DHS as the relevant agency.

[2]Rodriguez also initially applied for withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, 8 C.F.R. § 208.16(c), but he later withdrew that application before the IJ.

member of the Colombian liberal party and supported the campaign of Noemi Sanin for president. As part of his membership, Rodriguez passed out fliers and drove his car with mounted loud speakers on top of it. Rodriguez stated that his problems in Colombia and with the FARC began in 1998 when the FARC came to his farm and requested an 80 million pesos war tax, which Rodriguez never paid. Rodriguez reported the incident to the police, who instructed him to install telephones at his farm and city apartment.

Rodriguez further testified that, in January 2001, members of the FARC came to his shop and asked him to hide boxes for them in his shop. Rodriguez declined to store the boxes. Thereafter, Rodriguez began receiving threatening phone calls from the FARC, in which the FARC told Rodriguez that he was not cooperating with them, that he was their enemy and a war objector, and that he would be killed because he had warned the police. Rodriguez testified that he received approximately two or three calls per day from January until May or June 2001. In May 2001, members of the FARC followed him in his car and caused him to drive into a pothole and flip his car over. Thereafter, Rodriguez left for the United States, but returned to Colombia in December 2001 because he thought the situation had calmed. In January 2002, members of the FARC again followed Rodriguez in his car. Rodriguez believed that the people following him wanted to kill him because he never cooperated with them. Rodriguez also stated that he

3

came to the United States, rather than moving to another Colombian city, because a move to another city would have been difficult for him as he did not know anyone in another city.

On cross-examination, Rodriguez testified that his move to the United States was easier because he has family here. He further stated that his wife and children remain in Colombia and they have not experienced any problems since he left. With regard to the 80 million peso war tax that the FARC requested, Rodriguez stated that the FARC demanded a war tax from "everybody."

The IJ denied Rodriguez's applications for asylum and withholding of removal and ordered Rodriguez removed to Colombia. In an oral decision, the IJ found that Rodriguez's testimony was "vague, general, and lacked in specific detail." The IJ noted that Rodriguez did not indicate where or how often he participated in activities in support of Sanin's campaign or any other political activities, or whether he held any positions with the liberal party, of which he claimed he was a member. The IJ further found that Rodriguez did not provide details regarding the incident where the FARC stopped him on the road in 1998 and requested the war tax, specifically, whether Rodriguez was stopped in a roadblock along with other people or whether he had been singled out by the FARC. The IJ also found that Rodriguez provided few details of the incident concerning the storage of the FARC's boxes or the two instances where Rodriguez

4

was followed by FARC members in an automobile.

As to Rodriguez's assertion that the FARC asked him and everyone else in his area to pay the war tax, the IJ found that nothing in the record indicated that the FARC's demand was tied to any of the five enumerated categories of eligibility for asylum. The IJ made the same finding with regard to the FARC's demand for Rodriguez to store their boxes in his shop. The IJ also noted that Rodriguez's wife and children remained in Colombia without incident since he came to the United States, and that Rodriguez did not attempt to relocate within Colombia because he did not know anyone in any other location. The IJ thus concluded that Rodriguez failed to establish that he had a well-founded fear of persecution in Colombia on account of one of the five enumerated factors for asylum. The IJ also concluded that, because Rodriguez did not meet the higher burden of establishing eligibility for asylum, he could not establish his eligibility for withholding of removal.

Rodriguez appealed the IJ's decision to the BIA, arguing that the IJ erred in finding that (1) Rodriguez failed to establish eligibility for asylum; (2) Rodriguez's testimony was vague; and (3) relocation within Colombia was an alternative available to Rodriguez. In his brief before the BIA, Rodriguez argued that he was threatened by the FARC for failing to cooperate with them, and, thus, he was persecuted based upon his imputed political opinion. He further asserted that his testimony was detailed and consistent and credible in light of the country

5

conditions in Colombia. He also contended that the IJ failed to consider all of the evidence in the record. He noted that it was "without surprise" that he did not want to notify the Colombian authorities of the incidents with the FARC because the Colombian government was unable to curtail the FARC's violence. The BIA affirmed without opinion the IJ's decision and indicated that the IJ's decision constituted the final agency determination in Rodriguez's case.

On appeal, Rodriguez argues that the IJ erred in finding that his testimony was vague and lacked specific details sufficient to establish his eligibility for asylum, especially considering that the IJ did not make an adverse credibility finding. Rodriguez also maintains that the IJ failed to consider the serious threats he suffered from the FARC. He asserts that he was persecuted based upon his political opinion because he was a member of the liberal party, campaigned for that party, and did not cooperate with the FARC. He explains that his refusal to cooperate with the FARC demonstrated that his actions were "tantamount to a political opinion," specifically, that he was against the political inclinations of the FARC. He thus contends that he established past persecution and a well-founded fear of future persecution by the FARC due to his imputed political opinion. Rodriguez further argues that the country reports and the status of guerrilla groups in Colombia support his assertion of persecution based upon an imputed political opinion.

6

As an initial matter, the government contends that we lack jurisdiction to review the arguments Rodriguez raised in his appellate brief because he did not raise those arguments before the BIA. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto"). However, review of Rodriguez's brief before the BIA indicates that he raised the same issues that he now raises on appeal. Specifically, Rodriguez argued before the BIA, as he does before this Court, that (1) the IJ erred in finding that his testimony was vague and not specific; (2) he was threatened by the FARC for failing to cooperate with them, and, thus, he was persecuted based upon his imputed political opinion; (3) his testimony was detailed and consistent, and credible in light of the country conditions in Colombia; and (4) the IJ failed to consider all of the evidence in the record. We thus retain jurisdiction to review the issues Rodriguez raised in his appellate brief.

"When a single member of the BIA summarily affirms the IJ's decision without an opinion, such as here, the IJ's decision becomes the final removal order subject to review." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). To the extent that the IJ's decision was based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's factual determinations are reviewed under the substantial evidence test,

7

and we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir.2001) (quotation omitted).  Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . .").

To establish eligibility for asylum, the petitioner has the burden of proving that he is a "refugee," which is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion

8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A); see also Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005).  If the petitioner establishes past persecution, there is a rebuttable presumption that the petitioner has a well-founded fear of future persecution.  8 C.F.R. § 208.13(b)(1).  However, where the petitioner

8

cannot demonstrate past persecution, he may establish a well-founded fear of future persecution by showing that his "fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution. . . . In most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (citation and quotation omitted).

However, the petitioner's past persecution or well-founded fear of future persecution must be on account of a protected activity. See Forgue, 401 F.3d at 1286. "In order to demonstrate a sufficient connection between future persecution and the protected activity, an alien is required to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such a protected activity." Id. (quotation omitted) (emphasis in original). "Thus, evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." Ruiz, 440 F.3d at 1258.

To establish eligibility for withholding of removal, the petitioner must meet a standard more stringent than the "well-founded fear" asylum standard, and "show that h[is] life or freedom would 'more likely than not' be threatened upon return to

9

h[is] country because of, among other things, his political opinion." Huang v. U.S. Attorney Gen., 429 F.3d 1002, 1010-11 (11th Cir. 2005) (citing Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) and INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A)). Thus, an applicant who is unable to meet the standard for asylum is also unable to meet the more stringent standard for withholding of removal. Huang, 429 F.3d at 1011 (citing Al Najjar, 257 F.3d at 1292-93).

The IJ's finding that Rodriguez did not suffer past persecution or have a well-founded fear of future persecution on account of his political opinion is supported by substantial evidence in the record. Rodriguez testified that: (1) he participated in the liberal party and supported Noemi Sanin for president; (2) members of the FARC demanded that he pay a war tax, which tax Rodriguez acknowledged that the FARC requested from everyone; (3) he sought help from the police after the FARC demanded the tax and the police helped him by instructing him to install a telephone; (4) members of the FARC demanded that Rodriguez store their boxes in his shop and Rodriguez refused; (5) thereafter, he received numerous threatening phone calls from the FARC; and (6) during two separate occasions, people whom Rodriguez believed to be members of the FARC followed him in his car and once caused him to crash.

As the IJ correctly found, Rodriguez's testimony did not establish that the past persecution he suffered from the FARC was on account of his political

opinion, either actual or imputed. Rodriguez's testimony demonstrated that he refused to cooperate with the FARC, but such evidence does not establish that he was persecuted on account of a statutorily protected ground. See Ruiz, 440 F.3d at 1258. This is especially true regarding the FARC's demand that Rodriguez pay a war tax, where Rodriguez admitted that the FARC demanded such taxes from "everybody." Similarly, the evidence in the record does not compel the finding that Rodriguez had a well-founded fear of future persecution on account of his political opinion. Rodriguez's testimony did not establish a sufficient connection between his actual or imputed political opinion and his fear that he would suffer future persecution because of that opinion. See Forgue, 401 F.3d at 1286. Moreover, Rodriguez acknowledged that his wife and children still live in Colombia without incident and that he did not attempt to relocate within Colombia. See Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1327 (11th Cir. 2001) (explaining that "it is not unreasonable to require a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least to establish that such an option is unavailable").

To the extent that Rodriguez argues on appeal that he also established eligibility for withholding of removal, that argument is without merit. As noted above, the standard for eligibility for withholding of removal is more stringent than

that for asylum. See Huang, 429 F.3d at 1010-11. Here, Rodriguez did not demonstrate his eligibility for asylum because he did not establish that he suffered past persecution or had a well-founded fear of future persecution on account of his political opinion. As such, Rodriguez also cannot demonstrate that his life or freedom would more likely than not be threatened upon his return to Colombia because of his political opinion. See Huang, 429 F.3d at 1011 (explaining that an applicant who is unable to meet the standard for asylum is also unable to meet the more stringent standard for withholding of removal).

For all the foregoing reasons, the IJ's finding that Rodriguez did not establish his eligibility for asylum or withholding of removal on account of his political opinion is supported by substantial evidence in the record. Accordingly, his petition for review is

**DENIED.**